FLORICA CONSTANTINESCU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15562.   Promulgated July 14, 1948.

*John E. Higgiston, Jr., Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge*: The Commissioner has determined deficiencies in petitioner's income tax of $3,346.15 for the calendar year 1944 and $1,851.79 for the period January 1 to October 31, 1945. The deficiency for the year 1944 is due to four items being included in petitioner's net income, namely:

| | |
|---|---:|
| (a)  Dividends | $2, 650. 00 |
| (b)  Interest | 500. 00 |
| (c)  Short term capital gain | 3, 983. 74 |
| (d)  Long term capital gain | 6, 694. 83 |

Those items are explained in the deficiency notice as follows:

(a), (b), (c) and (d)   An examination of the records discloses that you received the items of income shown below. Since no return was filed by you, these items have been included in their entirety in your income under the provisions of section 22 of the Internal Revenue Code.

Similar adjustments were made by the Commissioner for the period January 1 to October 31, 1945, except as to amounts, and were explained in the deficiency notice in the same manner. To these adjustments petitioner assigned errors as follows:

(a) The Commissioner erred in determining that the status of petitioner was that of a resident alien during the calendar year 1944 and the period from January 1, 1945 to November 3, 1945.

(b) The Commissioner erred in subjecting to tax capital gains realized by petitioner during the calendar year 1944;

(c) The Commissioner erred in subjecting to tax capital gains realized by the petitioner during the period from January 1, 1945 to October 31, 1945.

The facts have been stipulated and may be summarized as follows:

The petitioner, Florica Constantinescu, a single woman, is a citizen of Roumania, presently residing in Paris, France.

Petitioner resided in Paris from 1934 to 1939. During that period she visited the United States on two occasions, once in October of the year 1933 and once again in the month of December in the year 1936. On each of these occasions petitioner was admitted to this country on a temporary visitor's visa and departed from this country within a period of six months.

Following the outbreak of the war in Europe in 1939, petitioner left France for Italy, where she embarked for New York. Petitioner was admitted to the United States at New York City on October 3, 1939, on a temporary visitor's visa for a period of six months. Prior to the expiration of the six-month period petitioner departed from the United States for Cuba. Petitioner returned to the United States on February 2, 1940, and was admitted at Miami, Florida, on a temporary visitor's visa for a period of five months. Prior to the expiration of her visitor's visa, petitioner applied for an extension of the period of her stay, which was granted. Thereafter petitioner applied for further extensions, which were granted and extended the period of her stay until May 15, 1942.

Prior to the latter date, petitioner applied for permission to enter the United States on an immigrant's visa. This application was denied under date of February 27, 1942, by the Department of State. On September 21, 1942, petitioner's application for a further extension of the period of her temporary visa was denied by the Department of Justice. Under date of September 30, 1942, a warrant for the arrest of the petitioner was issued by the Department of Justice, wherein it was charged that petitioner "has been found in the United States in violation of the immigration laws thereof, and is subject to be taken into custody and deported." On December 23, 1943, the warrant of

arrest referred to above was served on petitioner at New York. A hearing was had, at which time petitioner was represented by counsel. Following the hearing and pending determination, petitioner was released from custody upon posting a bond in the sum of $500 and upon petitioner's agreement to report, in writing, every 30 days to the Department of Justice. Under date of February 19, 1944, a preliminary determination was made by the Department of Justice as follows:

It is recommended that the alien be deported to France, if practicable, otherwise to Roumania, at Government expense on the charge contained in the Warrant of Arrest.

The petitioner appealed this determination and oral argument was had before the Board of Immigration Appeals at Washington, D. C., on April 12, 1944. On May 10, 1944, the Board of Immigration Appeals directed:

* * * that an Order of Deportation be not entered at this time but that the subject be required to depart from the United States, without expense to the Government, to any country of her choice, within ninety days after notification of decision, on consent of surety.

At the same time petitioner's application for preexamination was denied.

On September 13, 1944, the time within which petitioner was required to depart from the United States was extended for a period of 90 days at the request of petitioner. Under date of May 7, 1945, a further extension of 90 days was granted. Under date of July 25, 1945, and at the request of petitioner the time within which petitioner was required to depart from the United States was extended to October 25, 1945. On November 3, 1945, petitioner departed from the United States for France.

On January 24, 1946, the bond executed by petitioner to secure her release from custody was canceled and the collateral deposited as security was thereafter returned.

For the calendar years 1940, 1941, 1942, and 1943 petitioner filed Federal income tax returns with the collector of internal revenue at New York City on Form 1040.

During the calendar year 1944 petitioner received income from sources within the United States representing interest on and dividends from securities held in the United States, amounting to $3,150, exclusive of capital gains. Upon this sum an income tax of $795 was withheld and paid at the source. During the same year petitioner realized recognizable capital gains from the sale of securities by brokers in the amount of $10,678.57.

During the period from January 1 to November 3, 1945, petitioner received income from sources within the United States representing dividends on securities held in the United States amounting to $2,710, exclusive of capital gains. Upon this sum an income tax of $983.20 was withheld and paid at the source. During the same taxable period petitioner realized recognizable capital gains on the sale of securities by brokers in the amount of $8,006.19.

Petitioner filed no income tax return for the calendar year 1944 or for the taxable period from January 1 to November 3, 1945. Petitioner performed no services and was not otherwise engaged in a trade or business within the United States during such periods within the meaning of section 211 of the Internal Revenue Code.

During the period from October 3, 1939, to November 3, 1945, petitioner lived at some 14 different addresses, most of which were hotels. At No. 15 East 66th Street, New York, New York, which was the last address at which petitioner lived, she occupied an apartment pursuant to a lease agreement for a term of 15 months, to commence on July 1, 1943, and to end on September 30, 1944. Under date of August 10, 1944, a new lease agreement for a period of 12 months, to commence on October 1, 1944, and to end on September 30, 1945, was executed by petitioner. This lease was not thereafter renewed, but petitioner continued to occupy the premises until her departure from the United States on November 3, 1945, as a statutory tenant from month to month.

In this case the parties are not in disagreement as to the amounts of petitioner's income from sources within the United States during the periods in question. The only matter as to which they are in disagreement is whether or not petitioner was a resident alien during the periods in question.

It is petitioner's contention that she was a nonresident alien not engaged in any business in the United States during the entire time involved and therefore she was not taxable on capital gains which she received from the purchase and sale of certain securities through a brokerage account in her name. It is respondent's contention that during the entire year 1944 and up until the time she departed for France, November 3, 1945, petitioner was a resident alien and therefore taxable on all her net income as any other taxpayer would be. It is agreed between the parties that if petitioner was a nonresident alien during the periods in question she is not taxable on her capital gains, whereas if she was a resident alien during such time she is taxable on

these capital gains. The applicable Treasury regulations are printed in the margin.[1]

It seems clear that during the periods in question petitioner was not domiciled in the United States, but that is not a question we have to decide. In *Walter J. Baer*, 6 T. C. 1195, we said:

It must be kept in mind that "residence" and "domicile" have different meanings in the law. In Mertens Law of Federal Income Taxation, vol. 3, sec. 19.31, it is said:

"The words 'residence' and 'domicile' are often confused; a person may have several places of residence, but only one domicile. Any temporary place of abode may be a residence, but a domicile is a place of abode fixed and permanent or, at least, of indefinite duration. * * *"

In the *Baer* case we held that the taxpayer, a citizen of Switzerland, once having acquired a residence in the United States, did not lose it by returning to Switzerland with his family in July 1941 and remaining there throughout the year, there being substantial evidence that he intended to return to the United States as soon as possible and resume his stay here.

Of course, the facts in the instant case are very different from what they were in the *Baer* case. In the *Baer* case there was no question but what he had acquired a residence in the United States in 1940. The question there was whether this residence in the United States was changed back to Switzerland in 1941, and we held that it was not. In the instant case petitioner contends that she never did acquire any

---

[1] SEC. 29.211-2 [Regulations 111]. DEFINITION.—A "nonresident alien individual" means an individual—

(a) Whose residence is not within the United States ; and

(b) Who is not a citizen of the United States.

The term includes a nonresident alien fiduciary.

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient ; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

*       *       *       *       *       *       *

SEC. 29.211-5. LOSS OF RESIDENCE BY ALIEN.—An alien who has acquired residence in the United States retains his status as a resident until he abandons the same and actually departs from the United States. An intention to change his residence does not change his status as a resident alien to that of a nonresident alien. Thus, an alien who has acquired a residence in the United States is taxable as a resident for the remainder of his stay in the United States.

residence in the United States under the applicable law and regulations. Of course, if that is true, then it would be naturally true that she had no residence in the United States during 1944 and the period January 1 to November 3, 1945. On the other hand, respondent contends that under the applicable law and regulations petitioner did acquire a residence in the United States at some time after she came to the United States in 1939 and prior to the taxable years which we have before us and that, once having acquired it, she would not lose it until she actually departed from the United States. See Regulations 111, sec. 29.211-5, footnote 1, *supra*.

Notwithstanding the respective arguments of the parties as to whether petitioner acquired a residence in the United States in some prior year, we do not think it is necessary for us to decide whether or not petitioner was a resident of the United States in taxable years prior to those which we have before us. What we do have to decide is whether or not, under the undisputed facts which we have before us, petitioner was a resident of the United States during 1944 and from January 1 to November 3, 1945.

Petitioner, in contending that she was never at any time a resident of the United States, relies upon that provision of Regulations 111, section 29.211-2, which reads: "An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances." But in *J. P. Schumacher*, 32 B. T. A. 1242, we held that the part of the regulation above quoted was not conclusive as to the establishment of the fact of nonresidence. On that point we said:

* * * Moreover, we are inclined to doubt the validity of the last sentence in so far as it purports to establish conclusively the ultimate fact of nonresidence based entirely on the one fact of limitation of stay and regardless of other facts. Irrebuttable presumptions are not favored. Cf. *Heiner* v. *Donnan*, 285 U. S. 312. In view of the varying definitions of the term "residence" the question is one to be determined by all the facts and circumstances in each case. Cf. *L. B. Peeples*, 27 B. T. A. 879. * * *

We hold the same view here. Our task is not to determine the residence of petitioner in years prior to 1944, but to determine whether, under all the facts, she was a resident of the United States during the taxable periods which we have before us.

Just as petitioner seems to regard the above quoted part of section 29.211-2 of the regulations as conclusive in her favor, respondent

seems to regard section 29.211–5 of the regulations as conclusive in his favor.   That provision reads:

An alien who has acquired residence in the United States retains his status as a resident until he abandons the same and actually departs from the United States.   An intention to change his residence does not change his status as a resident alien to that of a nonresident alien.   Thus, an alien who has acquired a residence in the United States is taxable as a resident for the remainder of his stay in the United States.

Respondent, assuming that the facts show that petitioner acquired a residence in the United States in some year prior to January 1, 1944, relies upon the foregoing regulation as conclusively establishing that petitioner remained a resident of the United States up to the date of her departure for France November 3, 1945, regardless of the circumstances existing in the taxable years.   We are unwilling, for the same reasons as expressed in the *Schumacher* case, *supra*, as to the regulation there involved, to give section 29.211–5 of the regulations any such conclusive effect as that for which respondent contends.   As we said in the *Schumacher* case: "In view of the varying definitions of the term 'residence' the question is one to be determined by all the facts and circumstances in each case."

Applying that test, what are the facts which we have in the instant case?   Petitioner was admitted to the United States at New York on October 3, 1939, under a temporary visitor's visa for a period of six months.   Her presence here in the United States after the expiration of those six months was either upon the extension of her visa or extension of order of deportation.   The facts with reference to these several extensions of visas and orders of deportation are fully stated above and need not be repeated here.   During the entire taxable period (January 1, 1944, to November 3, 1945) the petitioner was under arrest.   She was either incarcerated or out on bail.   She was confined to limits prescribed by law.   She was required to report each month in writing to the Department of Justice.   She was under orders to leave the country under penalty of forcible deportation.   On November 3, 1945, petitioner did leave the country for her home in France.

Under such facts as we have in this record we can hardly see where such "exceptional circumstances" existed during the period which we have before us as would bring petitioner within the ambit of that part of section 29.211–2 of the regulations already quoted and make her a resident of the United States.   Of course, during all of the time here in question she was physically present in the United States, but

mere physical presence in a foreign country, even though it is considerably prolonged, is not of itself sufficient to establish residence. Cf. *Michael Downs*, 7 T. C. 1053; affd., 166 Fed. (2d) 504; certiorari denied June 1, 1948; *Arthur J. H. Johnson*, 7 T. C. 1040.

Respondent in his brief calls attention to the Commissioner's Mimeograph No. 5883, dated June 27, 1945 (C. B. 1945, p. 244), where the Commissioner interpreted the term "exceptional circumstances" used in the regulations in the following manner:

4. Attention is invited to the last sentence of section 29.211-2, Regulations 111, which states that an alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of that section, *in the absence of exceptional circumstances.* The general rule adopted by the Bureau is that the type of visa issued is only one of the elements entering into the classification of an alien as a resident or nonresident. It is believed that there are many cases now which will come under the phrase "in the absence of exceptional circumstances" because of the fact that many visitors' permits, or temporary visas, were issued to aliens who desired merely to get out of a war-torn country under any conditions and under any passport or visa so long as they reached the shores of the United States. For example, while the vast majority of such aliens originally entered the United States on temporary permits, numerous extensions of such permits have been applied for and granted and a great number of applications have been made by such aliens to enter a third country in order to qualify for reentry into the United States on immigrants' visas, thus indicating an intention to become residents of the United States even though such immigrants' visas may not have been granted. On the other hand, the possession of an immigrant's visa by an alien, upon his initial entrance into the United States, is not conclusive of his classification as a resident of this country. *Those aliens, therefore, who are properly classified as residents within the meaning of the regulations referred to above and under the general rules of law relating to what constitutes residence, should in every case be required to file returns on Form 1040, accounting for income from all sources, both within and without the United States, including capital gains.* \* \* \* [Italics supplied.]

We have no reason in the instant case to question the validity of the Commissioner's Mimeograph 5883 from which the above quotation is taken. However, under the facts which we have here we do not think petitioner can be "properly classified as a resident within the meaning of Treasury regulations and under the general rules of law relating to what constitutes residence," as said in Mimeograph 5883. We, therefore, hold that petitioner was not a resident of the United States during the periods in question. We decide this issue for petitioner.

*Decision will be entered under Rule 50.*