*Decision will be entered under Rule 50.*

RUDOLF JELLINEK AND MELITTA JELLINEK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71101.    Filed August 11, 1961.

*David G. Sacks, Esq.*, for the petitioners.
*Paul D. Barker, Esq.*, for the respondent.

DRENNEN, *Judge:* Respondent determined deficiencies in income tax against petitioners for the taxable years 1952, 1953, 1954, and 1955 in the respective amounts of $4,458.69, $4,155, $4,225.17, and $3,550.12.

The sole issue is whether petitioner Rudolf Jellinek (hereinafter referred to as Rudolf) was a nonresident alien during the period 1952 through 1955.

The evidence consisted of a stipulation of facts with exhibits attached and the depositions of the two petitioners taken in Vienna, Austria, on written interrogatories and cross-interrogatories.

### FINDINGS OF FACT.

The stipulated facts are found as stipulated.

Petitioners are, and at all times during the period here involved were, husband and wife. They filed timely joint Federal income tax returns, Form 1040, for the taxable years 1952, 1953, 1954, and 1955 with the district director of internal revenue at Newark, New Jersey. On each such return petitioners reported that their home address was "% C. A. Greenleaf, 488 Liberty Road, Englewood, New Jersey."

On their returns for the above years, petitioners reported the following compensation received, which was the only income reported: [1]

| Year | Employer | Where employed | Wages | U.S. income tax withheld |
|---|---|---|---|---|
| 1952 | Paramount International Films, Inc | Germany | $5,200.00 | } $4,688.32 |
| | Paramount Films of Germany, Inc | Germany | 20,243.26 | |
| 1953 | Paramount International Films, Inc | Germany | 5,200.00 | } 4,688.32 |
| | Paramount Films of Germany, Inc | Germany | 20,343.26 | |
| | Toffenetti Restaurant Co | New York City | 702.50 | 105.50 |
| | Charles Antell, Inc | Baltimore, Md | 172.80 | 35.20 |
| 1954 | Parmount International Films, Inc | Germany | 5,200.00 | } 4,221.10 |
| | Paramount Films of Germany, Inc | Germany | 20,343.26 | |
| | Stern Bros | New York City | 822.95 | 116.91 |
| 1955 | Paramount International Films, Inc | Germany | 5,200.00 | } 4,221.10 |
| | Paramount Films of Germany, Inc | Germany | 17,371.78 | |
| | Vincent Guarneri | New York City | 1,423.00 | 259.00 |

Petitioners did not report any itemized deductions and did not claim the standard deduction on any return for the years 1952 through 1955. For each of those taxable years petitioners computed net or taxable income as reported on their joint returns by subtracting $1,800, representing the credit for personal exemptions for each of them and their one child, from the total income reported.

With each of the returns filed for the above years petitioners attached Treasury Department Form 1116 entitled "Statement in Support of Credit Claimed by Individual For Taxes Paid or Accrued to a Foreign Country or a Possession of the United States." This form was filed each year to support petitioners' claim for credit for the German tax on wages and the Berlin emergency contribution (Notopfer) which had been collected in each year from the salary paid Rudolf by Paramount. On each Form 1116 it was reported that Rudolf was a resident of Germany.

Rudolf paid German tax on wages and the Berlin emergency contribution (Notopfer) on the compensation paid him by Paramount in the taxable years involved in the following amounts (expressed in dollars):

---

[1] The compensation reported from the two Paramount corporations (referred to herein collectively as Paramount) was compensation paid to Rudolf for services performed outside the United States. The compensation reported from other sources was paid to Melitta.

| Year | Total German tax paid |
|------|----------------------:|
| 1952 | $7,426.45 |
| 1953 | 7,059.40 |
| 1954 | 6,974.20 |
| 1955 | 6,219.20 |

On their returns for the above years petitioners claimed a *credit* for tax paid to a foreign country in the following amounts:

| Year | Credit claimed |
|------|---------------:|
| 1952 | $7,426.45 |
| 1953 | 7,059.40 |
| 1954 | 6,833.17 |
| 1955 | 5,751.46 |

In the statutory notice giving rise to this proceeding, respondent allowed in each year the total German taxes paid as *deductions* from petitioners' adjusted gross income but disallowed the claimed *credit* for foreign taxes paid.

Rudolf was born June 13, 1892, in Vienna, Austria. Melitta was born in 1910 in Prague, Czechoslovakia. Prior to World War II, Rudolf was a citizen of Czechoslovakia. In 1948 or 1949 he ceased to be a Czech citizen and in 1957 became a citizen of Austria. During the intervening years he was a stateless person. During the years Rudolf was a stateless person he traveled on a passport issued by the International Refugee Organization (IRO).

At the time of trial petitioners lived in Vienna, Austria. Rudolf was working in Vienna as assistant to the manager of American Films Export Association, which is connected with Paramount Pictures, Inc. He had been connected with Paramount since 1925. From 1945 to 1956, when he was transferred to Vienna, Rudolf was general manager for Germany for Paramount or its related companies. His office was in Frankfort, Germany.

Sometime before 1951 petitioners rented and furnished a 5-room house in Neu Isenburg, Germany, near Frankfort. Rudolf paid 500-marks-per-month rent for the house and he maintained this house until he was transferred to Vienna.

Paramount asked Rudolf to come to the United States in October 1951 and paid for his trip to New York. Melitta entered the United States on September 19, 1951, at New York City. Rudolf came to the United States for the first time on October 19, 1951. He received an American immigrant visa in Frankfort. On this visit Rudolf brought only enough clothing for the trip by air and he and Melitta stayed at a hotel in New York City. He left his cook and a pet dog in the rented house in Neu Isenburg.

Under date of October 24, 1951, Rudolf completed and filed a United States Department of Justice form entitled "Application for a Certificate of Arrival and Preliminary Form for a Declaration of Intention," in which he reported that his place of residence was Hotel

Bancroft, 40 West 72d Street, New York City; that he entered the United States for permanent residence on October 19, 1951; that since such lawful entry for permanent residence he had not been absent from the United States; that his last place of foreign residence was Frankfort, Germany; and that he desired to declare his intention to become a United States citizen in the United States District Court for the Southern District of New York. A Department of Justice form entitled "Certificate of Arrival" was issued for Rudolf and recited that he was admitted to this country for permanent residence.

When Rudolf came to New York in October 1951 he intended to become a citizen of the United States. He discussed the possibilities of working in this country with Paramount but he determined that it was not possible to get a job here. He thought there was a legal requirement that he stay in the United States for $2\frac{1}{2}$ or 3 years in order to become a citizen. After determining that he could not find immediate employment in this country Rudolf decided he could not stay long enough in the United States to meet the residence requirements for citizenship. He did not buy a house or rent an apartment in the United States.

On December 11, 1951, petitioners left New York City by plane for Frankfort. Before he left, Rudolf completed and filed a Department of Justice form entitled "Application for Permit to Reenter the United States." This application form showed that it was to be used by an "alien lawfully admitted to the United States for permanent residence." On this form Rudolf reported his and Melitta's address as 40 West 72d Street, New York City; that the name and address of his employer was Paramount International Films, Inc., 1501 Broadway, New York City; that he intended to be absent from the United States for 1 year, during which time he was going to visit Germany and other European countries as a representative for Paramount International Films, Inc.; and that his address abroad was to be "Frankfort on Main, Friedrich Abert Strasse 48, Germany."

A permit to reenter the United States dated November 28, 1951, was issued to Rudolf. This permit was to expire November 28, 1952.

Melitta and Rudolf were in Neu Isenburg until August 1952 when she left Europe and brought their son, George, to school in the United States. Melitta stayed in this country from August 1952 until about April 1953 when she returned to Neu Isenburg.

By letter dated August 18, 1952, Rudolf made formal request to the Immigration and Naturalization Service for a 6 months' extension of his permit to reenter the United States. In this letter, which was a sworn statement by Rudolf, he stated:

This request for an extension has been made necessary by the fact that my continuous presence in Germany is required by my employers, Paramount Inter-

national Films, Inc. I am employed by this corporation as a sales executive. * * *

In support of his request, Rudolf enclosed a letter written to him by the continental supervisor for Paramount International Films, Inc., in Paris. The supervisor indicated that this letter was—

in reference to our conversation about your intended return to the United States in order to comply with immigration laws and in order not to overstay the time-limit on your Re-Entry Permit.

Rudolf's permit was extended from November 28, 1952, to May 28, 1953.

Rudolf returned to New York City on March 2, 1953. He brought only personal clothing with him and stayed in a hotel in New York City. Furniture and other personal belongings were left in Neu Isenburg. Before he was to leave the United States he made application for a second permit to reenter this country. In the second application Rudolf indicated that he was an alien lawfully admitted to the United States for permanent residence; that he had arrived in the United States for permanent residence on October 19, 1951; that he had last arrived in the United States on March 2, 1953, at New York City; that his and Melitta's address was 488 Liberty Road, Englewood, New Jersey; that he was going abroad on March 31, 1953, as a representative for his employer, Paramount International Films, Inc.; and that his address abroad would be "Friedrich-Eberstrasse 48, Frankfurt-Main, Germany."

On March 16, 1953, Rudolf was granted a second permit to reenter the United States. This permit was to expire March 18, 1954.

Rudolf left New York City on March 31, 1953, and arrived in Frankfort the next day.

By letter dated January 19, 1954, which was a sworn statement, Rudolf made formal request for a 12 months' extension of his second permit to reenter the United States. This request was in substantially the same form as his request for extension of his first permit.

On February 18, 1954, Rudolf's second permit to reenter the United States was extended to March 18, 1955.

Melitta again came to the United States in March 1954 and remained in this country through November 1956, when she became a citizen of the United States. She returned to Europe in December 1956 and has remained there living with Rudolf to date.

Rudolf came to New York City again on March 4, 1955, and stayed until March 25. On March 7, 1955, he completed and filed a third application for a permit to reenter the United States. In this application he again indicated that he was an alien lawfully admitted to the United States for permanent residence; that he had arrived for permanent residence on October 19, 1951; that his last arrival was on March 4, 1955; that his address was "c/o Paramount Pictures, 1501

Broadway, New York City"; and that he was going abroad on business for about 2 years for Paramount International Films, Inc.

On March 8, 1955, a third permit to reenter the United States was issued to Rudolf. This permit was to expire March 9, 1956.

On March 25, 1955, Rudolf left New York City to return to Frankfort.

On January 12, 1956, Rudolf wrote the Immigration and Naturalization Service and by sworn statement made request for a 12 months' extension of his permit to reenter the United States. He again stated that his employer needed him in Germany and submitted a letter from the continental supervisor for Paramount International Films, Inc., in Paris, in support of his request. Rudolf's sworn statement and the letter which he attached were much like the ones previously submitted to obtain extensions of his permits to reenter the United States.

In February 1956 Rudolf was transferred to Vienna by his employer. His permit to reenter the United States was permitted to expire, and Rudolf was granted Austrian citizenship in 1957 and was issued an Austrian passport.

Petitioners have been living together in Vienna since Melitta's return to Europe in December 1956. They have not lived apart from each other during the years discussed above because of marital difficulties. At the time the depositions were taken Melitta would have liked to come to the United States permanently but she could not since Rudolf was in Vienna. Rudolf had no intention of becoming a citizen of the United States at that time.

Petitioners' son, George, attended Staunton Military Academy, Staunton, Virginia, and later the University of Alabama for a few months. He then joined the United States Air Force. He married in 1958. In 1960 he was attending the Latin American Institute in New York City.

Rudolf was physically present in the United States only during the periods October 19 to December 11, 1951, March 2 to March 31, 1953, and March 4 to March 25, 1955. He stayed in a hotel in New York City on each of these occasions and at no time did he maintain an apartment or home in the United States. No part of Rudolf's income for the taxable years 1952 through 1955 was from sources within the United States.

OPINION.

On their joint returns filed for the years 1952 through 1955, petitioners computed the Federal income tax on their entire net or taxable income and claimed a *credit* against the tax for taxes paid to West Germany on Rudolf's income earned in Germany. Respondent disallowed the credit, determining in the notice of deficiency that petitioners were resident aliens of the United States during each of the years involved, but allowed a *deduction* of the German taxes paid in

computing net or taxable income for each year. Petitioners do not claim error in the disallowance of the credit for foreign taxes and do not take issue with the determination insofar as it relates to Melitta, but do maintain that Rudolf was a nonresident alien during each of the taxable years and that his income from sources without the United States is nontaxable.[2] Respondent agrees that Rudolf was an alien and that none of his income was derived from sources within the United States during the years in question, so the issue is narrowed to whether Rudolf was a resident or nonresident during the taxable years. If Rudolf was a nonresident alien in those years, his income was nontaxable for United States income tax purposes. Under section 212(a) of the 1939 Code and section 872(a) of the 1954 Code the gross income of a nonresident alien includes only the gross income from sources within the United States.

Petitioners' argument is that even though Rudolf intended to become a citizen of the United States when he first came here in October of 1951 he abandoned that intention soon after arriving when he found he could not get a suitable job here, and that he never established a residence or became a resident of the United States. They also contend that even if Rudolf became a resident in 1951, he abandoned that residence when he left the United States in December 1951 and never reestablished residence in this country.

Respondent's position is that when Rudolf first came to this country in 1951 with the intention of becoming a citizen and permanent resident of this country, he became a resident alien at that time, and did not abandon that residence by his absences from this country during the years 1952 through 1955, as evidenced by his keeping valid reentry permits in existence during the entire periods he was absent from this country until he was transferred to Austria in 1956.

In support of his position respondent relies on section 39.211, Regs. 118, defining "nonresident alien individuals" and providing rules of evidence for determining whether an alien has acquired residence in the United States, on I.T. 4057, 1951-2 C.B. 93, and on *L. E. L. Thomas*, 33 B.T.A. 725 (1935), and *Walter J. Baer*, 6 T.C. 1195 (1946). I.T. 4057 and both of the cited cases deal with situations where it was assumed or admitted that the alien had once acquired residence in the United States and the question was whether such residence had been abandoned. As we pointed out in *Joyce de la Begassiere*, 31 T.C.

---

[2] While the notice of deficiency simply determined that petitioners were resident aliens during each of the years and computed their income tax under the appropriate revenue Code on that basis, respondent points out on brief that under section 131(a)(3), I.R.C. 1939, and sections 901(a) and (b)(3), I.R.C. 1954, the credit for foreign tax paid is allowable only if the foreign country of which such alien resident is a citizen or subject, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country; and since Rudolf was not a citizen of Germany during these years he does not qualify for the credit. Petitioners do not question this interpretation.

1031 (1959), affirmed per curiam 272 F. 2d 709 (C.A. 5, 1959), cases involving the question of whether a person with an established residence in a place ceases to be a resident of that place because of absence are not in point in determining whether a person has established residence in the first place. See also *Florica Constantinescu*, 11 T.C. 37 (1948).

The first question we must decide here is whether Rudolf ever became a resident of the United States, because if he did not his income is not taxable. Section 39.211–2, Regs. 118, provides in part that a "nonresident alien individual" is a person whose residence is not within the United States, that an alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax, and that whether he is a transient is determined by his intentions with regard to the length and nature of his stay. Section 39.211–4 of the regulations establishes rules of evidence for determining whether an alien has acquired residence, and provides first that an alien, by reason of his alienage, is presumed to be a nonresident alien. It provides further that such presumption may be overcome by—

(2) * * * (i) proof that the alien has filed a declaration of his intention to become a citizen of the United States under the naturalization laws, * * * or (iii) proof of acts and statements of an alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident.

The quoted provisions of the regulations merely indicate the type of proof that will be considered in determining whether the presumption of nonresidence has been overcome and does not, in our opinion, purport to mean that the filing of a declaration of intention alone would establish residence. As we said in *Joyce de la Begassiere*, *supra* at 1036:

It is obvious from the above definitions [of "resident" in various dictionaries] that a nonresident alien cannot establish a residence in the United States by intent alone since there must be an act or fact of being present, of dwelling, of making one's home in the United States for some time in order to become a resident of the United States. Some permanence of living within borders is necessary to establish residence. * * *

The term "residence" for purposes of determining whether an alien is a nonresident under section 211 *et seq.* of the 1939 Code and section 871 *et seq.* of the 1954 Code is not statutorily defined. However, this and other courts have had occasion to consider the question of residence in those cases in which the issue has been whether a United States citizen was a resident of a foreign country or countries for purposes of section 116(a) of the 1939 Code, as amended by section 148 of the Revenue Act of 1942, as well as in those cases in which the issue has been whether an alien is a resident or nonresident of the United States. The criteria for determining a taxpayer's residence have been held to be the same under both issues. See, e.g., *Seeley* v.

*Commissioner*, 186 F. 2d 541 (C.A. 2, 1951), affirming in part and reversing in part 14 T.C. 175 (1950); *Downs* v. *Commissioner*, 166 F. 2d 504 (C.A. 9, 1948), affirming 7 T.C. 1053 (1946), certiorari denied 334 U.S. 832 (1948), rehearing denied 335 U.S. 837 (1948); *Weible* v. *United States*, 244 F. 2d 158 (C.A. 9, 1957); *Jones* v. *Kyle*, 190 F. 2d 353 (C.A. 10, 1951); *Swenson* v. *Thomas*, 164 F. 2d 783 (C.A. 5, 1947); *Henningsen* v. *Commissioner*, 243 F. 2d 954 (C.A. 4, 1957), affirming 26 T.C. 528 (1956); *Donald H. Nelson*, 30 T.C. 1151 (1958); *Joseph A. McCurnin*, 30 T.C. 143 (1958); *Leigh White*, 22 T.C. 585 (1954); *David E. Rose*, 16 T.C. 232 (1951); *C. Francis Weeks*, 16 T.C. 248 (1951); *Herman Frederick Baehre*, 15 T.C. 236 (1950); *Audio Gray Harvey*, 10 T.C. 183 (1948); *Arthur J. H. Johnson*, 7 T.C. 1040 (1946); *Yaross* v. *Kraemer*, 83 F. Supp. 411 (D. Conn. 1949); *White* v. *Hofferbert*, 88 F. Supp. 457 (D. Md. 1950).

From the decided cases, the legislative history of the provisions of the law, and the Commissioner's regulations and rulings some criteria have been established to help determine whether a citizen of the United States is a resident of another country and whether an alien spending some time in the United States has become a resident of the United States. It would be of little value to restate those here, however, because it is settled that the determination of residence must be based upon the facts and circumstances of each particular case. Suffice it to say that although "residence" does not require a permanent home, *Ceska Cooper*, 15 T.C. 757 (1950), *Herman Frederick Baehre*, *supra*, or even a definite and settled abode, *Swenson* v. *Thomas*, *supra*, it does require that the taxpayer have some degree of permanent attachment for the country of which he is an alien, *Joyce de la Begassiere*, *supra*, *Rolf Jamvold*, 11 T.C. 122 (1948), and it has been said that it is this degree of permanence of an individual's attachment for a country in which he is at some time physically present which determines whether he is a domiciliary, a resident, or a transient of that country; see *Seeley* v. *Commissioner*, *supra*.

We think the evidence in this case indicates that Rudolf never accomplished the establishment of residence in this country even though he may have had it in mind to do so when he first came to this country in 1951. It appears that he came here at the invitation of his employer and with hopes that he could find such employment in the United States that would permit him to live here and become a citizen. That this was only a tentative plan, however, is evidenced by the fact that he did not give up his home in Frankfort but left his furniture, personal effects, and a pet dog there and continued to employ a cook at his German home. This tentative plan failed to materialize when Rudolf found he could not find suitable employment in the United States. For the short period of less than 2 months

that he was in New York in 1951 he stayed in a hotel. This was only a temporary arrangement until he could determine whether he would take up residence in this country. Rudolf took no steps to acquire a home or place to live in the United States; he took no part in any community activities and made no effort to become a part of any community; there was no "permanence of living within borders" so far as Rudolf was concerned. It appears that Rudolf's intent to establish residence in the United States was at all times conditional upon his finding suitable employment here and when the condition was not met the intent was abandoned before the fact of residence was ever accomplished.

If Rudolf did not become a resident on his first trip to the United States it seems clear that he did not do so later. The evidence is that Rudolf was present in the United States on only two occasions, each time for less than 1 month, after he left New York in December of 1951, and that these visits were to see his wife and son. On neither of these occasions did he make any effort to acquire a home in this country or to follow up his declaration of intention to become a citizen. He stayed in a hotel on each occasion and brought with him only the clothes necessary for his trip. He maintained his office and his home in Frankfort, and paid German taxes on his income throughout the period here involved. He became a citizen of Austria, his native country, soon after he was transferred there in 1956.

Respondent stresses the fact that Rudolf filed a declaration of intent to become a United States citizen when he first arrived and thereafter kept reentry permits alive at all times until he was transferred to Vienna, and claims that these facts are inconsistent with Rudolf's testimony that he abandoned his hopes of living in America soon after he arrived here. We do not think Rudolf's filing of a declaration of intent within a few days after he arrived in New York is inconsistent with his testimony. Admittedly he came here hoping to become a resident and citizen of the United States. But the filing of the declaration alone did not make him either. And the fact that he obtained reentry permits which stated that he had entered the United States for permanent residence is not inconsistent with his testimony that he kept the reentry permits alive so he could get to this country to see his wife and son. The record indicates no other purpose in his two subsequent trips to the United States; and the statements in the requests for permits that he had originally entered the United States for permanent residence were simply statements of fact.

It is true that petitioners filed joint United States income tax returns for each of the years here involved, which is not permissible for a nonresident alien, but it is also true that attached to each of

those returns was a statement wherein Rudolf stated that he was a resident of Germany.

While the documentary and other evidence relied on by respondent indicates that Rudolf originally intended to become a resident of this country and actually entered the country with that thought in mind, and may also support an inference that he kept hopes of eventually becoming a resident alive until he was transferred to Vienna, such evidence does not establish the fact of actual residence in this country, which we believe is necessary before an individual becomes a resident alien for tax purposes. Furthermore we think the conclusion is much more consistent with the admitted facts that Rudolf never abandoned his residence in Frankfort and never took any steps to actually acquire the status of a resident of the United States.

We conclude that Rudolf did not become a resident of the United States in 1951 or at any time thereafter during the years involved and consequently was a nonresident alien within the meaning of section 212 of the 1939 Code and section 872 of the 1954 Code. Compare *Joyce de la Begassiere, supra; Richard H. Lovald,* 16 T.C. 909 (1951) ; *Florica Constantinescu, supra; Commissioner* v. *Patino,* 186 F. 2d 962 (C.A. 4, 1950), affirming 13 T.C. 816 (1949). It follows that Rudolf's income during these years was not taxable.

*Decision will be entered under Rule 50.*