Mary Kawas Sanford (Formerly Mary Kawas) v. Commissioner.
Sanford v. Commissioner
Docket No. 3950-66.
United States Tax Court
T.C. Memo 1968-50; 1968 Tax Ct. Memo LEXIS 248; 27 T.C.M. (CCH) 266; T.C.M. (RIA) 68050; March 27, 1968. Filed *248 Held, under the facts, that petitioner, Mary Kawas Sanford, a citizen of the Republic of Honduras and an airline stewardess employed by TACA International Airlines, S.A., who maintained living quarters in New Orleans, Louisiana, which was the "home base" of her employer, was not a resident of the United States during the years 1961 and 1962 under the Internal Revenue Code, although physically present in the United States during a part of said years. Paul E. Hurley, 225 Baronne, New Orleans, La., for the petitioner. Bruce A. McArdle, for the respondent. TURNER Memorandum Findings of Fact and Opinion *249 TURNER, Judge: Respondent determined income tax deficiencies against petitioner as follows: Year
Deficiency
1961
$339.19
1962
302.77
The sole issue for decision is whether petitioner is taxable as a nonresident alien of the United States for the taxable years 1961 and 1962 under section 871(a) of the Internal Revenue Code of 1954. [1]
*250 Findings of Fact Some facts and some evidence have been stipulated by the parties and the facts so stipulated are found as stipulated. Mary Kawas Sanford (formerly Mary Kawas), herein sometimes called Kawas or petitioner, is an individual whose present residence address is 4501 Citrus Drive, New Orleans, Louisiana. During the years 1959 through 1962 petitioner was a femme sole. Petitioner was employed by TACA International Airlines, S. A., hereafter sometimes referred to as TACA, as a stewardess on March 16, 1959, and was continuously in the employ of said airline until her resignation on April 19, 1963. During the period of her employment by TACA, petitioner's "home base" was New Orleans, Louisiana. Petitioner desired to become a permanent resident of, or immigrant to, the United States. Her father, Bishara Kawas, was a native of Palestine, having been born there on February 6, 1900. In 1920 he and his family immigrated to La Ceiba, Honduras, where he has resided ever since. Petitioner also was born in Bethlehem, Palestine, on February 26, 1933, during a trip from Honduras on which Bishara and his wife accompanied his mother on what turned out to be her final illness. *251 After the death of the grandmother, the return trip to Honduras was delayed until after petitioner's birth due to the poor health of her mother. Based on the fact that petitioner was born in Palestine, it was determined by the United States Immigration and Naturalization Service that she was required to make application for immigrant status under the 267 visa quota of the Republic of Israel. She was informed that the last person who was permitted entrance to the United States under this quota had made application 13 years previously and that for some years applications had not even been accepted for persons under that visa quota. In the course of her employment by TACA, petitioner entered the United States under a D-1 type visa, under the provisions of Section 252 of the Immigration and Nationality Act, 66 Stat. 220 (1952). [2] The restrictions binding upon the alien's admission under the D-1 type visa are that the alien must be a crewman of a vessel or aircraft and that the alien embark from the United States within 29 days after arrival. The alien may enter the United States as often as desired during the 29-day period but the D-1 type visa must be renewed each 29 days. The *252 renewal of such visa is pro forma and may be had so long as the alien retains such employment. *253 Petitioner's flights during the period here involved originated in New Orleans, Louisiana, and went to various countries in Central America. Overnight stopovers for flight crews were made at Mexico City, Mexico; San Salvador, El Salvador; San Jose, Costa Rica; and Panama City, Panama. TACA flights stopped at Tegucigalpa, Honduras, from 10 to 20 minutes and stewardesses did not leave the plane. Each flight would return to New Orleans, Louisiana, on from the fourth to sixth day after departure. Upon return to New Orleans, Louisiana, petitioner would be off duty from two days to one week. In the course of her employment by TACA, petitioner during the years 1959 through 1962, inclusive, was physically present in the United States the following number of days: Year
Days Present in theUnited States
1959
143
1960
134
1961
179
1962
184
During March 1961, petitioner's schedule showing the time spent in the United States and the time spent elsewhere was as follows: [3]
Location
Duration
New Orleans, Louisiana
March 1 through 7, in- clusive
Panama City, Panama
March 8
Mexico City, Mexico
March 9 and 10
New Orleans, Louisiana
March 11 through 16, inclusive
Panama City, Panama
March 17
Mexico City, Mexico
March 18 through 20, inclusive
New Orleans, Louisiana
March 21 through 28, inclusive
Panama City, Panama
March 29
Mexico City, Mexico
March 30 and 31
*254 Petitioner rented a room from week to week at 2401 Esplanade Avenue, New Orleans, Louisiana, which she used as a residence while in New Orleans, Louisiana, and said room was leased to her continuously from April 1959 through November 1961. Petitioner rented a room from week to week at 1328 Esplanade Avenue, New 268 Orleans, Louisiana, which she used as a residence while in New Orleans, Louisiana, and said room was leased to her continuously from December 1961 through April 1963. From April 1959, petitioner expended no funds to maintain a residence outside the United States. During the period here involved, petitioner had an account with the Banco de Atlantida, Tegucigalpa, Honduras, and a charge account with Nelson *255 Merren (a department store) in La Ceiba, Honduras. She also had a credit account with Goldring's Department Store in New Orleans and an account with the bank of New Orleans. In making application for credit at Goldring's Department Store, she had indicated that she maintained a residence, and had done so for the past two years, at 2401 Esplanade Avenue, New Orleans, Louisiana. On that part of the application form styled "former residence" she listed La Ceiba, Honduras. During the period of her employment by TACA and her entry into the United States under the D-1 type visa petitioner became a member of a New Orleans church and at times did charity work at Charity Hospital in New Orleans. At the time of her resignation from TACA in April of 1963 petitioner had married Robert E. Sanford. [4] Sanford lived in New Orleans, where he was employed in construction work with McDermott Company. On a credit application form to Goldring's Department Store after her marriage to Sanford petitioner indicated 1328 Esplanade Avenue as a former residence. In 1959 petitioner had engaged the services of a New Orleans law firm to explore the possibilities of obtaining for her a status of permanent *256 resident of, or immigrant to, the United States. Their efforts were without success and her counsel sought legislative relief. A bill to the effect that "for the purposes of the Immigration and Nationality Act Mary M. Kawas shall be held and considered to have been born in Honduras" was introduced by Louisiana Congressman James H. Morrison. [5]
For the years 1961 and 1962 petitioner filed individual income tax return Forms 1040B (U.S. Non-Resident *257 Alien Income Tax Return) with the district director of internal revenue at New Orleans, Louisiana. On these returns she stated that she was a "citizen or subject" of Honduras. The respondent in his determination of the deficiencies herein determined that petitioner was during 1961 and 1962 a resident alien of the United States and was taxable on her income as such. Opinion The question presented in this proceeding is whether petitioner Mary Kawas Sanford was in the taxable years 1961 and 1962 a nonresident alien within the meaning of section 871(a) of the Code of 1954. [6] Respondent determined that she was a resident alien of the United States during said years and, therefore, the total amounts received by her during that period as wages from her employer constituted taxable income. *258 The respondent, in section 1.871-2(b), Income Tax Regs., [7] has promulgated a definition of residence as that term applies to aliens under section 871, supra. The 269 regulation refers to "an alien actually present in the United States" and the permanence or lack of permanence of his stay. The section concludes with the following sentence: "An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances." An identical sentence has been in the regulations since 1943, and this Regulation has been recognized by this and other courts in determining what constitutes nonresidence for Federal income tax purposes. John Henry Chapman, 9 T.C. 619, 621 (1947). *259 This sentence recognizes that, unlike an instance of entry into the United States for an indefinite stay, in a case where the stay is limited by the immigration laws to a definite period, the restriction in such case may militate against the stay so as to frustrate any intent or hope of the alien for attaining a continuity or permanence of residence sufficient to justify or require his classification as a resident within the meaning of the Revenue Code provisions. Further, it declares as a general proposition that in the case of a stay so limited the alien is not a resident "within the meaning of [the Revenue Code provision]." It does not, however, recognize or declare that an entry where the stay is limited to a definite period is conclusive of a nonresident status, but recognizes that there may be exceptional circumstances leading to a contra conclusion, stating that in a case where the stay is so limited to a definite period the alien "is not a resident * * * in the absence of exceptional circumstances." Compare in that connection the limitation of the stay of this petitioner in the United States to 29 days on any entry, with first one year, then two years and next for permanent *260 residence in the case of Joyce de la Begassiere, 31 T.C. 1031. It is to be noted also that in defining a resident of the United States "for purposes of the income tax" in the case of an alien, the regulation excludes "a mere transient or sojourner." In Webster's New International Dictionary, Third Edition, the noun sojourn is defined as "a temporary stay," one example being "as a traveler in a foreign country," and the verb as meaning "to stay as a temporary resident." For definitions of the word resident, both noun and adjective, and the words reside and residence as shown in Webster's New International Dictionary, Second Edition, see Joyce de la Begassiere at page 1035. In Webster's New International Dictionary, Third Edition, the noun resident is defined as "one who dwells in a place for some time; one who resides in a place." The definition carried in the Second Edition was "one who resides in a place; one who dwells in a place for a period of more or less duration." The evidence shows that petitioner, who was or at least regarded herself as a citizen of Honduras, was employed by TACA International Airlines, S.A., as a stewardess on March 16, 1959, and was continuously *261 in such employment until her resignation on April 19, 1963. She entered the United States under a D-1 type visa under the provisions of section 252 of the Immigration and Nationality Act, supra, which required her to embark from the United States within 29 days after arrival. Although as an alien she was permitted to enter this country as often as desired during the 29-day period, she was precluded by the immigration and nationality laws from making her tenure in the United States more definite than the status of an alien crew member of an aircraft. Section 252, supra. Not only did she have to leave the United States within 29 days from the date of her entry but if her employment with TACA should be terminated she would not only have to leave the United States but her right of reentry would be terminated. Not only was petitioner's stay in the United States on any one visit limited to 29 days but her efforts up to and during the years herein at obtaining indefinite or permanent status in this country were 270 completely frustrated. Because of the coincidence of her birth in Bethlehem, Palestine, she, for immigration and naturalization purposes, came under the quota of the Republic *262 of Israel rather than of Honduras. The quota for Israel is small and petitioner had been informed that the last person who was permitted entrance to the United States under this quota had made application 13 years previously and that for some years applications had not even been accepted for persons under this visa quota. In the course of petitioner's employment with TACA, her presence in the United States and out was intermittent and in the aggregate the difference was only a few days either way. For instance, she was present in this country in the aggregate 179 and 184 days in 1961 and 1962, respectively, and out of the country the rest of the time. These intermittent periods of physical presence in the United States as incidents of her employment which always carried her out of and not within the United States do not, in our opinion, warrant a conclusion that she was a resident of this country within the meaning of the Revenue Code. The fact that her actual stay in the United States was as much as it was, even in the aggregate, and on the overall was prolonged over the several years of her employment was due to the fortuitous circumstances that TACA maintained its headquarters *263 in New Orleans, rather than some city in Central America which it served. We are mindful of the fact that petitioner in 1959 engaged the services of a New Orleans law firm to aid her in attempts to become a permanent resident or immigrant of this country; and that, through counsel, she also sought legislative relief with respect thereto from Congress. Also she did rent a room in New Orleans where she stayed during her sojourns there but it is to be noted that such rental was on a week-to-week basis. Respondent relies, to some extent, upon allegations made by her counsel in a "Petition" of Mary Kawas for United States citizenship (in support of a bill introduced in Congress) pertaining to her ties with the community in New Orleans and her desire, which he refers to as intent, to acquire permanent residence or immigrant status. Obviously the statements therein cannot and do not refute the fact that she, an alien crew member of an airline company, was restricted by the immigration laws of the United States from becoming a sojourner or temporary resident for not more than 29 days on each entry, despite any degree of participation that she might have in community activities while staying *264 over in New Orleans between flights. Admittedly she had a strong desire to become a permanent resident of the United States, but the immigration law, including the immigrant quota for Israel, was such that there was virtually no possibility of accomplishment during the taxable years involved, if ever. It is clear that she was unsuccessful in attempts to attain the status of permanent resident or immigrant during 1961 and 1962 due to the fact that no vacancies existed during said period under the Non-Preference Portion of the Israeli quota. The facts here do not, in our opinion, reflect "exceptional circumstances" such as are envisioned by the last sentence of section 1.871-2(b) of the regulations so as to make of petitioner a resident of the United States under the revenue laws. We recognize, of course, that during all of the taxable periods in question Mary Kawas was physically present in the United States between flights for TACA, but mere physical presence in a foreign country, even though it is for an extended period of time, is not of itself sufficient to establish residence for Federal income tax purposes. See Florence Constantinescu, 11 T.C. 37, 43-44 (1948) *265 and Rolf Jamvold, 11 T.C. 122, 127 (1948). On the facts here we are of the opinion that petitioner was not and could not be more than a sojourner in the United States, and was not a resident. We conclude and hold that during the taxable years 1961 and 1962 petitioner was a nonresident alien within the intendment of section 871, supra. Decision will be entered for the petitioner. 271 Footnotes
1. Unless otherwise indicated, all references are to the Internal Revenue Code of 1954, as amended.↩
2. CONDITIONAL PERMITS TO LAND TEMPORARILY SEC. 252. (a) No alien crewman shall be permitted to land temporarily in the United States except as provided in this section, section 212 (d)(3), section 212(d)(5), and section 253. If an immigration officer finds upon examination that an alien crewman is a nonimmigrant under paragraph (15)(d) of section 101(a) and is otherwise admissible and has agreed to accept such permit, he may, in his discretion, grant the crewman a conditional permit to land temporarily pursuant to regulations prescribed by the Attorney General, subject to revocation in subsequent proceedings as provided in subsection (b), and for a period of time, in any event, not to exceed - (1) the period of time (not exceeding twentynine days) during which the vessel or aircraft on which he arrived remains in port, if the immigration officer is satisfied that the crewman intends to depart on the vessel or aircraft on which he arrived; or (2) twenty-nine days, if the immigration officer is satisfied that the crewman intends to depart, within the period for which he is permitted to land, on a vessel or aircraft other than the one on which he arrived. (b) Pursuant to regulations, prescribed by the Attorney General, any immigration officer may, in his discretion, if he determines that an alien is not a bona fide crewman, or does not intend to depart on the vessel or aircraft which brought him, revoke the conditional permit to land which was granted such crewman under the provisions of subsection (a)(1), take such crewman into custody, and require the master or commanding officer of the vessel or aircraft on which the crewman arrived to receive and detain him on board such vessel or aircraft, if practicable, and such crewman shall be deported from the United States at the expense of the transportation line which brought him to the United States. * * * (c) Any alien crewman who willfully remains in the United States in excess of the number of days allowed in any conditional permit issued under subsection (a) shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $500 or shall be imprisoned for not more than six months, or both.↩
3. This schedule was taken from an exhibit attached to the stipulation of the parties. It obviously is not typical as to time spent in and time spent out of the United States, inasmuch as it shows that petitioner was in New Orleans in March of 1961 for 21 days as contrasted with 10 days out of the country, whereas the stipulation shows that for 1961 petitioner was actually out of the United States 186 days as compared with 179 days in the United States.↩
4. There is no evidence of the exact date of petitioner's marriage to Sanford but counsel for the respondent in his opening statement stated that the marriage occurred in January of 1963. There seems to be no question that Sanford is an American citizen. ↩
5. Insofar as appears this bill was never passed by Congress. In a letter dated August 1, 1962, Congressman Morrison notified petitioner's attorneys that it was not acted upon in 1962 and would have to be reintroduced at the beginning of the 88th Congress in January of 1963. Louisiana Congressman F. Edward Hebert had previously advised petitioner's counsel that "during my experience here I have found that many bills are introduced in similar cases and none are passed, with rare exception."↩
6. SEC. 871. TAX ON NONRESIDENT ALIEN INDIVIDUALS. (a) No United States Business and Gross Income of Not More Than $15,400. - (1) Imposition of Tax. - Except as otherwise provided in subsection (b) there is hereby imposed for each taxable year, in lieu of the tax imposed by section 1, on the amount received, by every nonresident alien individual not engaged in trade or business within the United States, from sources within the United States, as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income (including amounts described in section 402(a)(2), section 631(b) and (c), and section 1235, which are considered to be gains from the sale or exchange of capital assets), a tax of 30 percent of such amount.↩
7. SEC. 1.871-2. DETERMINING RESIDENCE OF ALIEN INDIVIDUALS. * * * (b) Residence Defined. An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. [Emphasis added.]↩