ABRAHAM BAROCAS and MURIEL J. BAROCAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barocas v. Commissioner
Docket No. 8382-73.
United States Tax Court
T.C. Memo 1975-172; 1975 Tax Ct. Memo LEXIS 200; 34 T.C.M. (CCH) 755; T.C.M. (RIA) 750172; May 29, 1975, Filed Abraham Barocas, pro se. Alan Summers, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined a deficiency in the joint Federal income tax return of the petitioners for the taxable year 1970 in the amount of $2,863.77. The issue for our decision is whether petitioner Abraham Barocas was a "bona fide resident" of Nassau, Bahamas, for a period which included an "entire taxable year" so that earnings attributable to services performed by him in Nassau during 1970 are excludable *201 from his gross income pursuant to section 911(a). [1]
FINDINGS OF FACT Some of the facts have been stipulated by the parties. Such facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Abraham Barocas and Muriel J. Barocas are husband and wife. They filed a timely joint Federal income tax return for the calendar year 1970 with the district director of internal revenue, Philadelphia, Pennsylvania. At the time their petition herein was filed, they resided in Miami, Florida. Muriel J. Barocas is a party to this action only by virtue of having filed a joint return with her husband for the year in question. Further references to "petitioner" will therefore only refer to Abraham Barocas. Prior to 1969, the petitioner resided in Miami, Florida, where he owned and operated a manufacturing business, Skuff Guard, Inc. On January 1, 1969, having accepted a position as a comptroller with Gramco Management, Ltd., in Nassau, Bahamas, the petitioner left Miami and arrived in Nassau between 8:00 a.m. and 12:00 p.m. that same day. The petitioner *202 had no contract of employment with Gramco Management, Ltd., and because of a staff reduction, his employment terminated on October 16, 1970, soon after which he returned to his home in Miami. Later in 1971, he took a position in Kingston, Jamaica. Upon commencing work with Gramco Management, Ltd., the petitioner was informed that his assignment to the Nassau headquarters was temporary and that he might be required to locate to Europe in about 6 months. He was later notified that there was a possibility of moving the office to Switzerland and that an office was to be established in Luxembourg. In addition, there was also the possibility of his being transferred to Costa Rica to be an assistant to one of the company's executives. Because it was evident that he might have to move to a more distant foreign country, the petitioner placed his Miami business up for sale through a Miami real estate agency, which sale took place in April 1971. Muriel Barocas did not accompany her husband to Nassau nor did she ever visit him there. During his period of employment in Nassau, the petitioner maintained his home in Miami where his wife and some of his grown children continued to live and where *203 he stayed on his frequent trips home. The petitioner's wife suffered from a bladder suspension which ultimately resulted in surgery in the summer of 1970. In October 1969, she was revaccinated for smallpox in anticipation of accompanying the petitioner to Luxembourg. While employed by Gramco Management, Ltd., the petitioner continued to operate his solely-owned corporation in Miami. He was the only one capable of producing, packing and shipping the articles manufactured by Skuff Guard, Inc. However, on occasion his wife did receive raw materials necessary to fill orders. Although his wife answered some inquiries regarding the sale of Skuff Guard, Inc., and showed the business premises and equipment to prospective purchasers, the petitioner was required to be in Miami from time to time to explain the operations and to fill orders. In this regard, he made frequent periodic trips on weekends to Miami, [2] during which he stayed at his Miami home with his wife. On arriving in Nassau, the petitioner *204 resided in a hotel for several months and then rented a small apartment on a month-to-month basis in a private residence near his work. The term of the rental was left indefinite because he could not accurately forecast how long he would stay in Nassau. The petitioner was reimbursed for his living expenses while at the hotel. During his tenure in Nassau, the petitioner did not have his own car. He voted by absentee ballot in Florida elections. Although he was required to work long hours, especially towards the end of each month, and on some holidays and weekends, he participated in social activities in Nassau to the extent of eating meals and attending church services with friends. On their 1970 income tax return, the petitioners excluded, pursuant to section 911(a)(1), earnings received by Abraham Barocas for services performed by him while in Nassau. In his notice of deficiency, the respondent determined that the petitioner was not a bona fide resident of the Bahamas for the taxable year 1970 and therefore was not entitled to exclude from gross income amounts received from Gramco Management, Ltd. OPINION To qualify for the exclusion provided by section 911(a)(1), the petitioner *205 must establish that he was a "bona fide resident" of Nassau for an uninterrupted period which included "an entire taxable year." Section 911(a)(1) provides, as follows: SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule.--The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona fide resident of foreign country.--In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable years shall be computed by applying the special rules contained in subsection (c). Bona fide residence is a question of fact. Considering all relevant factors, each case must be decided on its own particular circumstances. See Sochurek v. Commissioner,300 F. 2d 34 *206 (C.A. 7, 1962), reversing 36 T.C. 131 (1961); Donald H. Nelson,30 T.C. 1151 (1958). The burden of proof is on the petitioner. The tests to be applied in determining whether a taxpayer is a bona fide resident of a foreign country or countries are those generally applicable in ascertaining whether an alien is a resident of the United States. See section 1.911-1(a)(2) and section 1.871-2(b), Income Tax Regs. Residence is defined in section 1.871-2(b), Income Tax Regs., as follows: (b) Residence defined. An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that *207 an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. Considering all the factors and circumstances, we do not feel that the petitioner was a bona fide resident of Nassau. Although his period of employment on Nassau was indefinite, he could not expect to be there for any substantial length of time. The petitioner was informed upon commencing work that his assignment to Nassau was temporary and that he probably would be relocated in as little as 6 months. It is therefore doubtful that he intended to become permanently attached to Nassau to any degree. See C. Francis Weeks,16 T.C. 248 (1951), Carl H. Thorsell,13 T.C. 909 (1949). Cf. Rudolf Jellinek,36 T.C. 826 (1961), acq. *208 1964-1 C.B. (Part 1) 4. The fact that the petitioner rented an apartment in Nassau on a month-to-month basis further indicates that the petitioner had no definite intention to reside there for an indefinite time. The petitioner made this rental arrangement precisely because he could not accurately forecast how long he would stay in Nassau. The retention by the petitioner of home ties adds support to the conclusion that he was not a bona fide resident. Petitioner placed his business up for sale only on learning that he would shortly be transferred to a more distant country. The fact that while he was in Nassau he made frequent trips home to Miami to fill orders leads us to conclude that had he been assured of staying in Nassau, he would not have listed the business for sale and would have tried to continue to operate it, in his spare time, on periodic trips to Miami. While it is true that the presence of a taxpayer's family is not necessarily controlling as to his residence, Fred H. Pierce,22 T.C. 493 (1954); David E. Rose,16 T.C. 232 (1951), the failure of Muriel J. Barocas to join the petitioner in Nassau, not being due to circumstances *209 beyond his control tends to negate bona fide residency. No satisfactory reasons have been given why she remained in Miami. An assertion of incompatibility is negated by the fact that on his frequent trips to Miami he stayed at home and by the fact that she was apparently going to Luxembourg with him. In regard to her physical condition, no medical evidence was offered to verify that her health would have prevented her from accompanying the petitioner. Lastly, the necessity of Muriel J. Barocas remaining in Miami to show the business to prospective purchasers and to occasionally receive raw materials is not clear in absence of evidence demonstrating that she was practically the only one who could have done this. The frequency and periodicity of the petitioner's return trips themselves indicate the lack of bona fide residency on the part of the petitioner. Moore v. United States,180 F. Supp. 483 (S.D. Tex. 1960), affd. 289 F. 2d 926 (C.A. 5, 1961). The fact that he voted in Florida by absentee ballot, although not determinative of itself, is a further indication. See Rev. Rul. 71-101, 1971-1 C.B. 214. Although the petitioner on occasion *210 did attend church and eat meals with friends in Nassau, these facts alone, especially in absence of any other indication of the petitioner's participation in the social life of the community, are not indicative that the petitioner was a bona fide resident of Nassau. See C. Francis Weeks,supra.
Our conclusion that the petitioner was not a bona fide resident obviates our deciding whether the petitioner was present in Nassau for an uninterrupted period which includes an entire year. No evidence being presented in regard to the petitioner's ordinary and necessary expenses while temporarily away from home, we are unable to consider their deductibility. In accordance with the above, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Because of his weekend trips to Miami, the petitioner was not physically present for 510 full days in any 18 consecutive month period which included the entire taxable year 1970.↩