Kajetan Rynowiecki v. Commissioner.
Rynowiecki v. Commissioner
Docket No. 5587-66.
United States Tax Court
T.C. Memo 1968-33; 1968 Tax Ct. Memo LEXIS 265; 27 T.C.M. (CCH) 151; T.C.M. (RIA) 68033; February 26, 1968. Filed Kajetan Rynowiecki, pro se, 52 Knapp Ave., Clifton, N.J. Denis M. Neill, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's income tax for 1964 in the amount of $131. Two questions are presented for decision: (1) Whether petitioner's mother was a resident of the United States during the taxable year 1964, for purposes of section 152(b)(3), Internal Revenue Code of 1954; [1] and (2) whether petitioner furnished more than onehalf of the total support of his mother for the taxable year 1964. Findings of Fact Some of the facts were stipulated and are so found. Kajetan *267 Rynowiecki (hereinafter referred to as petitioner) resided at Clifton, New Jersey at the time of filing the petition in this case. His Federal income tax return for 1964 was filed with the district director of internal revenue at Newark, New Jersey. Petitioner claimed his mother, Helena Rynowiecki (hereinafter sometimes referred to as "Helena"), as a dependent in his Federal income tax return for the taxable year 1964. In addition, petitioner, who was unmarried, utilized the head of household tax table prescribed in section 1(b)(1) of the Internal Revenue Code of 1954 in computing the amount of his income tax 152 for that year. In the notice of deficiency respondent disallowed petitioner's claimed deduction of a $600 exemption for his mother and redetermined his tax by using the rates of tax on the income of individuals prescribed by section 1(a) of the Internal Revenue Code rather than the head of household rates. At all times pertinent hereto, Helena was a Polish citizen and, prior to December 4, 1964, lived in an apartment in Poznan, Poland. Helena had three married sons and a daughter who also lived in Poland in 1964. Two of the *268 sons and the daughter lived in Poznan, Poland, the same town in which Helena lived. The other son lived in Wroclaw, Poland. Helena left Poland for the United States in November of 1964, using a round-trip steamship ticket. She traveled on a temporary visitor's visa and arrived in the United States on December 4, 1964. She returned to Poland in December of 1965. During her stay in the United States she lived in petitioner's apartment in Passaic, New Jersey. While in the United States, Helena did not file a declaration of intention to become a citizen. She did not file a Certificate of Alien Claiming Residence in United States, Form 1078. She filed an Application for an Extension of Time for Temporary Stay, Immigration and Naturalization Form I-539, dated February 4, 1965, on which she stated that her reason for coming to the United States was to visit her son, the petitioner, and that her reason for requesting an extension of her temporary visa was to extend her stay in the United States to one year. While in the United States, her legal status was that of a nonimmigrant alien, as defined in the Immigration and Nationality Act, 8 U.S.C., sec. 1101 (a)(15)(B) *269 (1964). Helena's stay in the United States under her original visa was limited to the period from her arrival to February 16, 1965. She applied for and obtained one extension of her visa, which limited her stay to October 26, 1965. Helena did not file an application for a permanent resident's visa. She could have filed such an application but she would have had no assurance that her request would be granted since the granting of such applications is discretionary on the part of the Immigration and Naturalization Service. She would have been subject to the Polish immigration quota and would have obtained no preference due to her relationship to petitioner. Petitioner was confined to Passaic General Hospital from September 12, 1964, through September 19, 1964, during which time he was in traction and a full length cylinder plaster cast was applied to his right leg as treatment for a knee ailment. He was ill with this ailment until January of 1965. Ultimate Findings of Fact Petitioner's mother, Helena, was not at any time during the taxable year 1964 a resident of the United States for the purposes of section 152(b)(3). The petitioner has not sustained his burden of proving *270 that he furnished more than one-half of the total support of his mother for the taxable year 1964. Opinion Petitioner computed his 1964 Federal income tax claiming his mother as a dependent and using the "head of household" tax table prescribed by Code section 1(b)(1). Respondent has determined that petitioner is not entitled to claim his mother as a dependent, and that petitioner is therefore required to compute his tax as an unmarried individual under the rate tables prescribed in section 1(a)(1). Section 1(b)(2)[2] of the Code provides that an individual shall be considered as the head of a household if, in addition to other requirements not pertinent here, his 153 home is the principal place of abode for a dependent of the taxpayer, and the taxpayer is entitled to a deduction for that person under section 151. [3] Section 151 provides that a taxpayer is entitled to a deduction of $600 for each dependent (as defined by section 152) whose gross income is less than $600. Section 152[4] provides that a taxpayer's mother may be a dependent if the taxpayer provides over half of her support, but limits the exemption to dependents who are citizens or residents of the United States *271 (except in certain circumstances not applicable here). *272 Section 152 does not specify the date for making the residency determination, but the Regulations (Income Tax Regs. sec. 1.152-2(a) (1)) explain that "to qualify as a dependent an individual must be a citizen or resident of the United States * * * at some time during the calendar year in which the taxable year of the taxpayer begins." The issues, then, are (1) whether petitioner's mother was a resident of the United States at any time in 1964 for purposes of Code section 152 and (2) whether petitioner provided over half of the support for his mother in that year. The regulations interpreting section 152 do not define the term "resident of the United States" but section 1.871-1, Income Tax Regs., and sections following contain provisions relating to the residence of alien individuals for "purposes of the income tax." The regulation defining residence, quoted in the margin, [5] has often been cited with approval by our Court and other courts as a practical implementation of the law. See Josette J. F. Verrier Friedman, 37 T.C. 539, 551 (1961); Ceska Cooper, 15 T.C. 757, 763 (1950). The emphasis in this definition *273 is on the alien's intentions as to the nature and length of his stay, the purpose of his presence in this country, and his status under the immigration laws. *274 Whether an alien is a resident under this regulation is primarily a question of fact to be determined in large part by the intent of the alien. Walter J. Baer, 6 T.C. 1195 (1946). But intent alone will not suffice since there must be an act of being present, of dwelling, of making one's home in the United States for some time in order to become a resident of the United States. Domicile and residence are not synonymous but some degree of permanent attachment to the country is required to establish residence. Joyce de la Begassiere, 31 T.C. 1031, 1035-1036 (1959), affd. per curiam 272 F. 2d 709 (C.A. 5, 1959); Rudolf Jellinek, 36 T.C. 826, 834 (1961); Rolf Jamvold, 11 T.C. 122 (1948); William E. Adams, 46 T.C. 352, 361 (1966). Under these standards it is clear that Helena, petitioner's mother, did not become a resident of the United States in 1964. She was then 65 years of age and had three sons, a daughter, and grandchildren living in Poland where she had lived all her life. She left Poland for the United States, using a round-trip steamship ticket, 154 in November of 1964. She entered the United *275 States on December 4, 1964, on a temporary visitor's visa scheduled to expire on February 16, 1965. On February 4, 1965, she filed an application with the immigration authorities to extend her visa to October 26, 1965, the date on which her passport from Poland was scheduled to expire. In the application, prepared by petitioner, she stated that the purpose of her stay was to visit her son. She did not file a Form 1078 (certificate of alien claiming residence in the United States) or otherwise take any steps to acquire a more permanent immigrant or other status. While in this country she lived in the petitioner's apartment and there is no evidence that she abandoned her apartment in Poland when she came to the United States. [6] There is no evidence that she established any attachments or ties of any kind to any community in this country, as for example, by joining in church or community activities, by applying for membership in any club or community group, or by otherwise identifying herself in any way with local community life. Cf. Rudolf Jellinek, supra; William E. Adams, supra.She left for Poland when her visa expired. When asked why his mother returned *276 to Poland, petitioner testified, in substance, that "her heart" was in Poland where she had lived her entire life and where her other four children as well as her grandchildren lived. Petitioner contends that his mother came to this country to care for him during his illness, that his illness was one of indefinite duration and that therefore she met the requirement of section 1.871-2(b), Income Tax Regs., as an alien whose "purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States * * * though it may be his intention *277 at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned." But petitioner was released from the hospital on September 19, 1964, some ten weeks before his mother arrived, and he admits that he had recovered from his illness by January 1965, the month after his mother's arrival. We do not believe the record shows the direct relationship between his illness and his mother's visit which he asks us to find, or, as discussed above, that she made her home in this country in the manner contemplated by the regulation. Although our determination that petitioner's mother was not a resident of the United States for Federal tax purposes disposes of the issue whether petitioner is entitled to claim an exemption for his mother and to compute his tax as head of a household, we note for the sake of completeness that petitioner has also failed to prove he provided one-half of his mother's support. She was in the United States less than one month of 1964 and was in Poland the rest of the year. Aside from petitioner's testimony that he mailed to his mother in Poland about $20 worth of lace or other similar material each month which she resold *278 to obtain money for her support, the only evidence offered as to the extent of his support in relation to costs consisted of affidavits of petitioner's mother and brother given before a notary in Poland but written by petitioner and mailed to them for their signatures. The statements were clearly hearsay, and not admissible to prove the facts stated therein. Wigmore, Evidence, sec. 1384 (3d Ed. 1940). Petitioner did not know how much his mother needed for support in Poland in terms of the costs of her lodging, food, clothing and medical care, or the value in Poland of the materials he sent to her. On this record we must conclude that petitioner has failed to carry his burden of proof that he provided over half of his mother's support. Decision will be entered for the respondent. 155 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 1. TAX IMPOSED. * * * (b) Rates of Tax on Heads of Households. - * * * (2) Definition of head of household. - For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in section 2(b)), and either - * * * (B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151. For purposes of this paragraph and of section 2(b)(1)(B), an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual. ↩
3. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. * * * (e) Additional Exemption for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or * * * ↩
4. SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): * * * (4) The father or mother of the taxpayer, or an ancestor of either, * * * (b) Rules Relating to General Definition. - For purposes of this section - * * * (3) The term "dependent" does not include any individual who is not a citizen of the United States unless such individual is a resident of the United States * * *.↩
5. Sec. 1.871-2 Determining residence of alien individuals. * * * (b) Residence defined. An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.↩
6. Section 101(a)(15)(B) of the Immigration and Nationality Act, 8 U.S.C., sec. 1101(a) (15)(B) (1964), which defined Helena's legal status while in this country, is in pertinent part as follows: "(15) The term 'immigrant' means every alien except an alien who is within one of the classes of nonimmigrant aliens - * * * (B) an alien * * * having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure;"↩