PIR M. TOOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Toor v. Commissioner
Docket No. 104-76.
United States Tax Court
T.C. Memo 1977-399; 1977 Tax Ct. Memo LEXIS 42; 36 T.C.M. (CCH) 1616; T.C.M. (RIA) 770399; November 16, 1977, Filed *43 Robert H. Hishon, for the petitioner. Terrell W. Dahlman and Stanley H. Smith, Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency of $1,145 in petitioner's Federal income tax for calendar year 1973. Petitioner has conceded one of the issues raised in the pleadings, leaving for decision the following: Whether petitioner's brother was a resident of the United States during the year 1973 so as to entitle petitioner to a deduction for a dependency exemption for his brother under the provisions of sections 151 and 152, I.R.C. 1954, [1] and a medical expense deduction under section 213(a) for amounts expended for his brother's medical care. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner maintained his legal residence in Marietta, Georgia, at the time he filed the petition in this case. He filed his Federal individual income tax return for calendar year 1973 with Internal Revenue Service Center *44 in Chamblee, Georgia. Chaudhary Muhammad Ramzan Toor (Ramzan) was petitioner's brother. He was born in 1926 and was a citizen of Pakistan. In March of 1973 Ramzan came to the United States for the purpose of seeking medical treatment for a suspected heart condition. Petitioner had purchased and sent to Ramzan in Pakistan a round-trip airplane ticket for Ramzan's use in traveling between Pakistan and this country. Ramzan had no relatives other than petitioner in the United States. Ramzan brought only one bag of clothes with him to this country. He brought no money, no furniture and no household goods with him from Pakistan. Ramzan owned a home and farm in Pakistan. He left his wife, his two daughters, and his three sons in Pakistan. During Ramzan's absence from Pakistan his three sons operated the farm that he owned there. Ramzan entered the United States on a tourist visa that was valid for 3 months. After arriving in New York, Ramzan went to Atlanta where petitioner met him. Petitioner arranged for an examination of his brother at the first opportunity after his arrival in the Atlanta area, and on March 27, 1973, Ramzan was admitted to the Emory University Hospital. *45 Physicians at the hospital determined that Ramzan was suffering from chronic lymphocytic leukemia in addition to a heart condition. While in the hospital Ramzan received several blood transfusions of washed, packed cells. He also began to undergo chemotherapy treatments. On April 6, 1973, Ramzan was discharged from the hospital. Thereafter, the chemotherapy was continued on an outpatient basis at first once a week and later twice a month. The median life expectancy of a person with chronic lymphocytic leukemia at the stage to which the disease had progressed in Ramzan on April 6, 1973, was 19 months. It was the hospital's usual policy to inform patients of their terminal illnesses. Ramzan's hospital records indicate that his ability to speak and understand English was such that it was necessary to have petitioner serve as an interpreter for his brother in order for Ramzan to be able to communicate with hospital personnel. After his discharge from the hospital, Ramzan required blood transfusions on 12 occasions, beginning April 18. Ramzan required washed, packed cell blood transfusions rather than regular, packed blood transfusions. The procedures for obtaining washed, *46 packed cell blood are not complicated. Ramzan had the most common blood type, type "O" positive. Usually when a patient comes to Emory University Hospital from outside the surrounding area, he is eventually sent back home for continued treatment by the referring physician, especially if the treatment is simple, the patient lives far away, and there is at the patient's home a doctor willing to continue the treatments initiated at Emory. Notes under date of April 2, 1973, were placed with Ramzan's chart in Emory Hospital listing names of physicians who might be able to follow up on Ramzan's treatment upon his return to Pakistan. On August 9, 1973, Ramzan's attending physician wrote a doctor in Ramzan's home town, Rawalpindi, about the possibility of continued treatment for Ramzan after his return home. The letter indicates that the inquiry concerning continued medical treatment was under-taken at the request of both Ramzan and petitioner. In addition, Ramzan's doctor stated that "Mr. Ramzan would of course like to return to Pakistan as soon as feasible, and wishes to continue under the care of a hematologist there." Ramzan's physician described the care his patient was receiving, *47 offered to forward additional data concerning Ramzan's health if the Pakistani doctor decided to assume Ramzan's care, and requested a recommendation of another Pakistani hematologist in the event that the doctor to whom he had written was unable to assume Ramzan's care. On August 28, the Pakistani doctor replied that he would be able to care for Ramzan without difficulty in accordance with the "regime" Ramzan was on. He indicated that transfusion facilities were adjacent to his office and that transfusions should pose no problem.The doctor stated that it might be difficult in Pakistan to readily obtain one of the drugs used in Ramzan's chemotherapy treatments, fluoxymesterone, so he suggested that Ramzan bring sufficient quantities of this drug with him when he returned from Emory. After his discharge from the hospital and during the time he was receiving treatment on an outpatient basis, Ramzan spent most of his time in petitioner's apartment. He and petitioner took sightseeing trips to New York and Washington. Ramzan's tourist visa was extended for an additional 6-month period upon an application accompanied by a medical certificate to allow for further medical care. While *48 in the United States, Ramzan was supported by petitioner; he earned no income and made no efforts to secure employment. He did not file either a declaration of intention to become a citizen or a Form 1078, Certificate of an Alien Claiming Residence in the United States. Ramzan never obtained a driver's license while in the United States. He never took any affirmative steps toward bringing his wife and children to the United States. On September 3, 1973, Ramzan was admitted to Emory University Hospital again. During the previous night he had suddenly developed a fever of 103 degrees and rectal pain. He was thought to have septicemia. At first Ramzan seemed to respond to treatment, but he relapsed and died of an infection on September 22. His remains were subsequently returned to Pakistan, and petitioner redeemed the return trip portion of the round-trip airplane ticket he had purchased for Ramzan. On his Federal income tax return for 1973 petitioner claimed a dependency exemption under section 151 with respect to Ramzan. He also took a medical expense deduction under section 213 for amounts expended for Ramzan's care. On the ground that Ramzan was not a citizen of the *49 United States in 1973, respondent disallowed the dependency exemption and the portion of the medical expense deduction representing amounts expended by petitioner on behalf of Ramzan. OPINION Section 151(a) and (e) allows a taxpayer a deduction for a personal exemption in the amount of $750 for each of the taxpayer's dependents as defined in section 152 whose gross income is less than $750. Section 152 defines the term "dependent." Under this section a brother of a taxpayer over half of whose support is provided by the taxpayer qualifies as a dependent. Under section 152(b)(3), however, an individual who is not a citizen or national of the United States is excluded from the definition of the term "dependent" unless the individual is a resident of the United States or of a country contiguous to the United States. Section 213 allows a deduction for medical expenses for a taxpayer and his "dependents" as defined by section 152. Section 1.871-2, Income Tax Regs., contains guidelines for determining the residence of alien individuals, and these guidelines have been consistently used in determining whether a person is a resident of the United States within the meaning of section *50 152(b)(3). [2]Section 1.871-2(b), Income Tax Regs., defines "residence": (b) Residence defined. An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States *51 within the meaning of this section, in the absence of exceptional circumstances. Section 1.871-4, Income Tax Regs., sets forth rules of evidence governing the determination of an alien's residence: Sec. 1.871-4 Proof of residence of aliens. (a) Rules of evidence. The following rules of evidence shall govern in determining whether or not an alien within the United States has acquired residence therein for purposes of the income tax. (b) Nonresidence presumed. An alien, by reason of his alienage, is presumed to be a nonresident alien. (c) Presumption rebutted-- * * * (2) Other aliens. In the case of other aliens, the presumption as to the alien's nonresidence may be overcome by proof-- (i) That the alien has filed a declaration of his intention to become a citizen of the United States under the naturalization laws; or (ii) That the alien has filed Form 1078 or its equivalent; or (iii) Of acts and statements of the alien showing a definite *52 intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident. Applying the standards set forth in these regulations to the facts shown in this record, we conclude that Ramzan was not a resident of the United States in 1973. In reaching this conclusion we have considered all the facts in this record as well as the presumptions set forth in the regulations. Ramzan's stay in this country was limited to a definite period by his tourist visa. Accordingly, the final sentence of section 1.871-2(b), Income Tax Regs., precludes a finding of residency in the absence of exceptional circumstances. The record does not indicate that the treatment Ramzan received was of such an exceptional nature that it would have been likely or necessary for him to remain in the United States for an extended period. To the contrary, the letter from the Pakistani doctor indicates that Ramzan's course of treatment could have been continued without difficulty upon his return. Consequently, petitioner has not demonstrated any exceptional circumstances that would warrant a finding of residency notwithstanding *53 the fact that Ramzan's stay in this country was limited in time. Additionally, under the evidentiary presumption of section 1.871-4(b), Income Tax Regs., Ramzan is presumed to have been a nonresident because of his alienage. He filed neither a declaration of intention to become a naturalized citizen nor a Form 1078, either of which, under section 1.871-4(c)(2)(i) and (ii), Income Tax Regs., would have sufficed to rebut the presumption. Ramzan's 6-month stay in this country was not so extended as to constitute him a resident. The record as a whole shows no acts or statements of Ramzan's indicating a definite intention to acquire residence in the United States, which under section 1.871-4(c)(2)(iii), Income Tax Regs., would be sufficient to overcome the presumption of nonresidence. Petitioner testified that his brother had at some time stated to him that he liked this country and would like to remain here. However, the evidence as a whole clearly indicates that Ramzan never had an intention to become a resident of this country. There is clear evidence in the record supporting the inference that Ramzan did not intend to reside in the United States. He left his family behind *54 in Pakistan and never made any attempt to bring them to the United States. He brought with him only the bare necessities, leaving practically all his possessions in Pakistan. He neither sought employment here nor attempted to secure a driver's license. During the entire time he was in this country, Ramzan had the return portion of a round-trip airplane ticket, so that he could return to Pakistan at any time. The letter written by Ramzan's attending physician less than a month prior to Ramzan's final admission to Emory Hospital indicates that Ramzan wanted to return to Pakistan "as soon as feasible." Although Ramzan had obtained a 6-month extension of his tourist visa to continue medical treatment, there is no indication in the record that he had attempted to or was considering attempting to get a further extension or that such a further extension, if sought, would be granted. In our view the sum total of all these facts dictates the conclusion that Ramzan never intended to reside in the United States. Ramzan never developed any community ties which might be indicative of an attachment to this country. See Jellinek v. Commissioner,36 T.C. 826, 834 (1961); de la Begassiere v. Commissioner,31 T.C. 1031, 1036 (1959), *55 affd. per curiam 272 F.2d 709 (5th Cir. 1959). Petitioner contends that Ramzan was a resident because any intention to return home that he might have harbored was a "mere floating intention, indefinite as to time." Petitioner contends that under section 1.871-2(b), Income Tax Regs., such an indefiniteness as to when he might return home was sufficient to constitute Ramzan a resident. In essence, petitioner argues that Ramzan was a resident because he had not made specific arrangements to return to Pakistan. In our view, however, the record discloses ample evidence of Ramzan's intent to return to Pakistan in the near future notwithstanding the fact that he had not made a reservation on a specific flight to Pakistan. Having considered the facts and circumstances of this case and having given due regard to the presumption of nonresidence set forth in the regulations, we conclude that Ramzan was not a resident of this country in 1973. Accordingly, petitioner is not entitled to a dependency exemption for his brother or to a medical expense deduction for amounts expended on Ramzan's behalf. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect in the year in issue.↩
2. See Truelove v. Commissioner, T.C. Memo. 1971-261; DeLauzirika v. Commissioner, T.C. Memo. 1971-181; El-Sabban v. Commissioner, T.C. Memo. 1971-105↩.