IQBAL QUIDWAI AND RABIA QUIDWAI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Quidwai v. Commissioner
Docket No. 11993-81.
United States Tax Court
T.C. Memo 1984-42; 1984 Tax Ct. Memo LEXIS 634; 47 T.C.M. (CCH) 962; T.C.M. (RIA) 84042; January 24, 1984. Iqbal Quidwai, pro se. Margaret Hebert, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency
1977
$2,379
1978
$1,021
The issue to be decided is whether petitioners are entitled to exclude from their taxable income $10,000 in 1977 and $5,000 in 1978 under the provisions of a treaty between the United States and Pakistan. FINDINGS OF FACT Petitioners, Igbal and Rabia Quidwai, were legal residents of Newbury Park, California, when they filed their *635 petition. They filed timely Federal income tax returns for 1977 and 1978. Iqbal Quidwai entered the United States on July 13, 1971, on a F-1 student visa. [1] *636 He enrolled at Cal State University, Fullerton, California, and received a B.A. degree in business management in August 1976. Subsequently, in 1977, he enrolled in the M.B.A. degree program at Pepperdine College and attended some classes at that school until 1979. He did not complete the program. While at Pepperdine during each of the years 1977 and 1978, Mr. Quidwai took 9 hours of graduate courses in each of two trimesters. He did not attend school during the summer months of 1977 and 1978 or in the third trimester. Shortly after entering the United States, Mr. Quidwai obtained a job as a stock boy at K-Mart. In 1973 through part of 1976, he worked for United Courier, Incorporated. From October 1976 until sometime in 1979, he was a full-time employee of Safety-Kleen Corporation. During this period, he began work as a salesman and was promoted to a position as a branch manager. Mr. Quidwai has returned to Pakistan twice since coming to the United States in 1971. Both visits were for a duration of approximately 3 weeks. The first visit was in 1974 when he got married and returned to the United States with his wife. The second trip was in 1978. Mrs. Quidwai came to the United States after her marriage to Mr. Quidwai in 1974. Prior to coming to the United States, she had received a degree in chemistry from the University of Karachi, Pakistan. In 1977, she enrolled in a master's degree program at Cal State in Fullerton. During 1976 and part of 1977, she was employed full-time by Winning Laboratories, *637 Inc. For the remainer of 1977 and 1978, she was employed full-time by Rajar Enterprises, Inc. Neither petitioner has paid taxes to Pakistan since coming to the United States. On their 1977 Federal income tax return, petitioners reported salary income of $28,378 and deducted $5,000 for Mr. Quidwai and $5,000 for mrs. Quidwai, citing the United States-Pakistan treaty. They also claimed dependency exemption deductions for themselves, for one child, and for Quamar Qidwai (sic), mother, and Sohail Qidwai (sic), brother representing that the mother and brother lived in their home 12 months of the year and that they provided more than one-half of the dependants' support. On the same return, petitioners claimed employee business expenses for instruction at Pepperdine university and E. Woods Reading Class. On their 1978 Federal income tax return, petitioners reported salary income of $34,774 and entered a negative figure of $5,000 for "other income" and on an accompanying schedule stated that "TP has F-1 Student Visa. Claims part of his wages are exempt under Article XIII of U.S. Tax Treaty with Pakistan. IRS has allowed in past." Attached to the 1978 return is a Schedule C which *638 shows that Mr. and Mrs. Quidwai were proprietors of a business in Santa Barbara, California, named Safety-Kleen Corp. On the return petitioners claimed deductions for real estate taxes and for interest on a home mortgage. In addition, petitioners claimed a deduction for employee educational expenses at Pepperdine University for $1,352 (shown on the schedule as $1,338). In the notice of deficiency respondent disallowed the $10,000 deduction claimed for 1977 and the $5,000 exclusion claimed for 1978 on the ground that: "It has not been established that you meet the provisions of Article XIII of that treaty." OPINION The question to be decided is whether petitioners are entitled to exemption from Federal income taxes on $10,000 of their income in 1977 and $5,000 in 1978 under the following provision of the United States-Pakistan income tax convention: [2]
Article XIII (1) A resident of one of the contracting States who is temporarily present in the other contracting State solely (a) As a student at a recognized university, college or school in such other State, * * * * * * shall be exempted from tax by such other State * * * (ii) with respect to an amount not in excess *639 of 5,000 United States dollars for any taxable year, representing compensation for personal services. *640 We think it quite clear that neither petitioner was a "resident" of Pakistan "temporarily present" in the United States "solely" as a student during 1977 and 1978. The treaty defines "resident of Pakistan" as an individual "resident in Pakistan and not resident in the United States for purposes of the United States tax." Art. II, Par. (1)(i). We are convinced that petitioners were residents of the United States for purposes of the income tax during 1977 and 1978 and were not merely temporarily present in this country solely as students. In two other cases involving Pakistanis claiming the benefits of the treaty, the Court has reached a similar conclusion. Budhwani v. Commissioner,70 T.C. 287, 290-293 (1978); Siddiqi v. Commissioner,70 T.C. 553 (1978). The facts were less favorable for the Government in those cases than in the instant one. The determination of residency for United States income tax purposes is a factual one and must be resolved through a consideration of all the relevant facts and circumstances. Parkv. Commissioner,79 T.C. 252, 286 (1982), on appeal (D.C. Cir., Dec. 2, 1982; Adams v. Commissioner,46 T.C. 352, 358 (1966); *641 Jellinek v. Commissioner,36 T.C. 826, 834 (1961). As general guidelines for making the determination of residency, the regulations provide that an alien actually present in the United States "who is not a mere transient or sojourner" is a resident of the United States for income tax purposes. Whether he is a transient is determined by his "intentions with regard to the length and nature of his stay." One who comes to the United States "for a definite purpose which in its nature may be promptly accomplished" is a transient; but if his purpose is of such a nature that "an extended stay may be necessary for its accomplishment" and to that end the alien "makes his home temporarily in the United States," he becomes a resident even though he may at all times intend to return to his domicile. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States "in the absence of exceptional circumstances." Sec. 1.871-2(b), Income Tax Regs.[3] In applying these residency guidelines, an alien, by reason of his alienage, is presumed to be a nonresident, but that presumption is a rebuttable one. Sec. 1.871-4(b) *642 and (c), Income Tax Regs.[4]
*643 These general guidelines for making a residency determination must be read in conjunction with the specific provisions of Article XIII of the treaty, the benefits of which are not only denied to a resident of the United States, but are granted only to a person temporarily in the United States solely as a student at a recognized school. Presence in the United States for a period which is not temporary and in any capacity other than as a student will disqualify the individual for those benefits. In presenting his case, Mr. Quidwai, the only witness, was mainly preoccupied with assertions that, on examination of his Federal income tax returns for 1973, 1974, and 1975, the Internal Revenue Service allowed him the benefits of the treaty [5] and that other Pakistanis who were students had also enjoyed its benefits. As a result, the trial record is skimpy with respect to the crucial facts. Based on the record as it stands, we must conclude that petitioners have failed to carry their burden of proving that they qualify for the claimed exclusions. We think it clear that their objectives in the United States were far broader than academic training. *644 The record contains facts which strongly suggest that, by 1977 and 1978, petitioners had become residents of the United States, as they admit that they did in 1980, and that they were not merely temporarily in this country solely as students. As reflected by our findings, Mr. Quidwai first came to the United States in 1971. In October 1976, he became a full-time employee of Safety-Kleen Corporation and continued to work fulltime for that company through both of the years before the Court. He was present in the United States continuously except for two brief visits to Pakistan, one in 1974 when he married Mrs. Quidwai and one in 1978. Mrs. Quidwai, who already had a college degree in chemistry when she came to the United States in 1974, was employed full time in both 1977 and 1978. Petitioners' salaries were quite substantial. Petitioners offered no evidence to explain why they chose to study in the United States or, in order to show the temporary nature of their stay here, what they planned to do on their departure from the United States on completion of their studies. An examination of their 1977 return, which lists petitioners' respective occupations as "sales representative" *645 and "chemist," shows that petitioners claimed dependency exemption deductions for Mr. Quidwai's mother and brother who lived in petitioners' home 12 months of the year, thus indicating that petitioners had established a family home. They claimed deductions for the cost of their studies at Pepperdine and for other courses of study, thus at least technically admitting that they were engaged in a trade or business in the United States. Their income tax return for 1977 as a whole (substantial salaries and deductions for tags for three automobiles, for credit union and charge card interest, for contributions, and for "miscellaneous business expenses") is inconsistent with a solely-as-a-student status and strongly suggests that petitioners had settled in as United States residents. Petitioners' 1978 income tax return, which lists their respective occupations as "BR manager" and "chemist," contains even stronger evidence that petitioners were residents of the United States and were not present in this country solely as students. Their combined salaries had risen to $34,774. They claimed deductions for home mortgage interest and real estate taxes, thus admitting that they had purchased *646 their own home. Again, they claimed educational expense deductions, thus admitting that they were engaged in a trade or business. Indeed, as detailed in our findings, as part of their return they included a schedule C showing that petitioners were proprietors of the Safety-Kleen Corporation. Form W-2 attached to the return shows that Mr. Quidwai received a salary of $35,290.56 in 1978 from a corporation with that name. [6]
The record thus demonstrates that, in 1977 and 1978, petitioners were not mere transients or sojourners in this country within the meaning of sec. 1.871-2(b), Income Tax Regs, discussed above. That they intended to stay in the United States for an indefinite period is shown by such facts as both petitioners' full-time employment over a period of years, their education course designed to improve their skills in their work, their lack of any well planned course of study which was subject to completion within a definite period, their purchase of a home, and their acquisition of a business as proprietors. They cannot reasonably be said *647 to have been in the United States in 1977 and 1978 for a temporary period solely as students. Thus, they do not qualify for the income exclusion provided by Article XIII of the treaty. Mr. Quidwai emphasizes and reiterates, however, that in 1977 and 1978 he had only a student's F-1 visa, that the Immigration and Naturalization Service had granted him permission to work, and that to tax him in these circumstances would be unjust and would violate the treaty. We must, however, decide the case on the facts presented in court. We do not know what representations Mr. Quidwai made to the Immigration and Naturalization Service in order to obtain renewals of his F-1 visa. Nor do we know the level of competence of the official who gave him the renewals. He offered no documentation to support his assertion that he had a work permit. See footnote 1, supra. We see no injustice in a law which requires individuals who have established a family home for themselves, a parent, and a sibling in this country and who have competed with taxpaying residents for full-time jobs and in carrying on a business to bear a fair share of the tax burden. Certainly, the treaty, as we understand it, does *648 not grant them the relief they claim. We conclude that petitioners were residents of the United States for purposes of the United States income tax and that they were not temporarily present in this country solely as students during 1977 and 1978. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. As explained in Budhwani v. Commissioner,70 T.C. 287, 287-288 (1978): A person granted admittance to the United States as a nonimmigrant student under an "F-1" visa is admitted solely for the purpose of pursuing a full course of study at an approved school. Accordingly, it is not anticipated that the student will work off-campus either for wages or for board and lodging. Permission for the student to accept part-time employment may be granted, upon proper application, but only where the student can show that such employment is necessary to maintain himself as a student and that the necessity is due to unforeseen circumstances arising after acquisition of student status. Where employment is permitted, it may not be allowed to interfere with the student's ability to pursue a full course of study, and in no event may such employment exceed 20 hours per week while school is in session. See sec. 101(a)(15)(F), Immigration and Nationality Act, 8 U.S.C. sec. 1101(a)(15)(F) (1970); 8 C.F.R. sec. 214.2(f)(6) (rev.ed 1977).
[1]↩
2. Convention Between the Government of the United States of America and the Government of Pakistan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to taxes on Income, July 1, 1957 (1959) 10 U.S.T. 985, T.I.A.S. No. 4632 reprinted in 1960-1 C.B. 755. The definitions in Art. II are relevant: ARTICLE II (1) In the present Convention, unless the context otherwise requires: (h) The term "resident of the United States" means any individual or fiduciary who is resident in the United States for the purposes of the United States tax, and not resident in Pakistan for the purposes of the Pakistan tax * * * (i) The term "resident of Pakistan" means any person (other than a citizen of the United States or a United States corporation) who is a resident in Pakistan for the purposes of Pakistan tax and not resident in the United States for the purposes of the United States tax. * * * (j) The terms "resident of one of the contracting States" and "resident of the other contracting State" mean a person who is a resident of the United States or a person who is a resident of Pakistan, as the context requires * * * [Income Tax Convention with Pakistan, July 1, 1957, arts. XIII, II, 24 Fed. Reg. 10100 (1959), reprinted in part in 1960-1 C.B. 755.] Art. XIII (3) of the convention provides: (3) A resident of one of the contracting States temporarily present in the other contracting State under arrangements with such other State or any agency or instrumentality thereof solely for the purpose of training, study or orientation shall be exempted from tax by such other State with respect to compensation not exceeding 10,000 United States dollars in the rendition of services directly related to such training, study or orientation (including emoluments and remuneration, if any, from the employer abroad of such resident). The trial record contains no information to indicate that petitioner was in the United State under arrangements with the United States or an instrumentality thereof for training, study, or orientation. Therefore, Art, XIII (3) has no applicability. Siddiqi v. Commissioner,70 T.C. 553, 555↩, n. 2 (1978).
3. Sec. 1.871-2. Determining residence of alien individuals. (b) Residence defined. An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of his section, in the absence of exceptional circumstances. ↩
4. Sec. 1.871-4. Proof of residence of aliens. (a) Rules of evidence. The following rules of evidence shall govern in determining whether or not an alien within the United States has acquired residence therein for purposes of the income tax. (b) Nonresidence presumed. An alien, by reason of his alienage, is presumed to be a nonresident alien. (c) Presumption rebutted. * * * the presumption as to the alien's nonresidence may be overcome by proof-- * * * (iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident.↩
5. Petitioners failed to inform the Court that for 1976 the Internal Revenue Service denied petitioners the income exclusion authorized by the treaty, that he filed a petition in this Court under sec. 7463 (docket No. 10472-80S), and that the Court upheld the Internal Revenue Service's deficiency determination.↩
6. The record is not clear as to whether the business that they owned and the business for which he worked were the same.↩